NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0197n.06

No. 10-2377

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

**Feb 17, 2012**

LEONARD GREEN, Clerk

| | |
|---|---|
| PHILLIP HERNANDEZ, individually, and as Conservator of the Estate of G.H., a minor; ESTATE OF G.H., a minor, )<br><br>Plaintiffs-Appellants, )<br><br>v. )<br><br>HARTFORD LIFE & ACCIDENT INSURANCE COMPANY, )<br><br>Defendant-Appellee. ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN<br><br>M E M O R A N D U M<br>O P I N I O N |

BEFORE:    MARTIN and McKEAGUE, Circuit Judges; and CALDWELL, District Judge.[*]

PER CURIAM.  This case presents an action under 29 U.S.C. § 1132(a)(1)(B) to recover benefits wrongfully denied under an employee welfare benefits plan governed by the Employees Retirement Income Security Act (ERISA).  Shelley Hernandez was an employee of Ascension Health at St. Mary's Medical Center in Saginaw, Michigan.  As such, she was a participant in an accidental death and dismemberment insurance plan administered by defendant Hartford Life & Accident Insurance Company ("Hartford").  Named beneficiaries under the plan are Shelley Hernandez's husband, Phillip Hernandez, and minor daughter, referred to as "G.H."  Tragically, Shelley Hernandez died on September 18, 2005, just nine days after delivering the couple's second child.

_____

[*]Honorable Karen K. Caldwell, United States District Judge for the Eastern District of Kentucky, sitting by designation.

Her death was undisputedly caused by a pulmonary embolism, i.e., blockage in one or more arteries in the lungs caused by matter in the blood. The ensuing claim for benefits under the plan was denied by defendant Hartford on August 18, 2006 based on its determination that a pulmonary embolism is a "circulatory malfunction." Loss caused by "any heart, coronary or circulatory malfunction" is expressly excluded from coverage under the plan. The district court considered the claim of plaintiffs Phillip Hernandez and the Estate of G.H. on the administrative record compiled by Hartford. Finding that the denial of benefits was not shown to be arbitrary and capricious and was supported by substantial evidence, the district court awarded judgment to Hartford. For the reasons that follow, we affirm.

We review the district court's decision de novo and apply the same legal standard as the district court. *Kovach v. Zurich American Ins. Co.*, 587 F.3d 323, 328 (6th Cir. 2010). The parties agree that Hartford's decision is assessed under the deferential "arbitrary and capricious" standard of review. Hartford's decision will thus be upheld as long as it was the "result of a deliberate, principled reasoning process and is supported by substantial evidence." *Cox v. Standard Ins. Co.*, 585 F.3d 295, 302 (6th Cir. 2009) (quoting *DeLisle v. Sun Life Assur. Co. of Canada*, 558 F.3d 440, 444 (6th Cir. 2009)). Where as here, the issue involves primarily interpretation and application of plan language, rather than controverted medical evidence, Hartford's decision will be deemed sufficient if it is "rational in light of the plan provisions." *Helfman v. GE Group Life Assur. Co.*, 573 F.3d 383, 392 (6th Cir. 2009) (quoting *Cooper v. Life Ins. Co. of N. Am.*, 486 F.3d 157, 165 (2007)).

On appeal, plaintiffs do not dispute Hartford's determinations (1) that pulmonary embolism was the immediate cause of Shelley Hernandez's death; (2) that pulmonary embolism is a

"circulatory malfunction;" and (3) that the plan terms exclude from coverage a loss caused by a

circulatory malfunction. Indeed, the record clearly supports each of these determinations. These

determinations are in effect conclusive, demonstrating that Hartford's denial of benefits under the

plan—whether "fair" or not—was the result of a deliberate, principled reasoning process and is

supported by substantial evidence. We thus concur, applying the deferential standard of review that

constrains us, with the district court's assessment that Hartford's decision has not been shown to be

arbitrary and capricious.

We acknowledge and are not unsympathetic with plaintiffs' passionate arguments that the

analysis should not stop with these three determinations. They maintain that the plan covers bodily

injury caused by an "accident" and the record demonstrates that the fatal pulmonary embolism was

caused by an accident. Indeed, the record supports the conclusion that an accident, a lower left leg

fracture Shelley Hernandez sustained on July 4, 2005 (and ensuing surgical repair and treatment)

triggered the pulmonary embolism that caused death ten weeks later. Yet, although "circulatory

malfunction" is not defined in the plan, plaintiffs do not challenge Hartford's determination that a

pulmonary embolism is a circulatory malfunction.[1] Nor do they dispute Hartford's finding that death

was caused by the pulmonary embolism. Under the terms of the plan, which Hartford has

---

[1]In the absence of an explicit definition, plan administrator Hartford was obliged to interpret a plan term like "malfunction" in accordance with its plain meaning as it would be understood by an ordinary person. *Kovach*, 587 F.3d at 332. Hartford contends the ordinary plain meaning of "malfunction" is embodied in its dictionary definition, "to function imperfectly or badly: to fail to operate normally." *Merriam-Webster Online Dictionary*, http://www.merriam-webster.com/dictionary/malfunction (last visited Feb. 16, 2012). Again, plaintiffs have not challenged this definition.

discretionary authority to interpret in determining eligibility for benefits, the plan's circulatory malfunction exclusion operates irrespective of the *cause* of the malfunction, i.e., irrespective of whether failure of the circulatory system to operate normally was the result of an accident or a non-accidental event. Hartford's construction of the exclusion in accordance with its plain and ordinary meaning can hardly be deemed arbitrary and capricious.

Conversely, to construe the exclusion, per plaintiffs' argument, as applying only where the circulatory malfunction was caused by a pre-existing disease or condition or some other non-accidental event, would be to read words into the exclusion that are not there. This we may not do. *See Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 557 (6th Cir. 1998). Furthermore, such a construction (i.e., interpreting the exclusion as not operating where the circulatory malfunction was caused by an accident) would be directly contrary to the plan definition of "accident:"

> **Accident** means an event which results in bodily injury which occurs to You while Your coverage is in effect. It does not include any heart, coronary or circulatory malfunction.

A.R. 310, Group Accidental Death and Dismemberment Certificate, p. 29. In other words, interpreting the circulatory malfunction exclusion as affording coverage for an accidental loss even though the bodily injury was caused by a circulatory malfunction, as long as the circulatory malfunction was caused by an accident, would place the exclusion in direct conflict with the plan definition of accident. Such a construction would contravene the canon requiring that plan provisions be construed as parts of an integrated whole so as to harmonize them and render none nugatory. *See Prater v. Ohio Educ. Ass'n*, 505 F.3d 437, 443 (6th Cir. 2007).

Finally, plaintiffs argue that Hartford's enforcement of the circulatory malfunction exclusion irrespective of the cause of the malfunction yields absurd results, negating coverage in all instances. They cite the hypothetical example of an accident victim who suffered dismemberment of an arm and bled to death, contending Hartford could interpret "circulatory malfunction" so broadly as to deny coverage even in that case. First, our task is to evaluate the rationality of Hartford's decision, interpreting and applying plan language to the medical evidence presented in *this* case, not based on speculation about how Hartford might decide some other case. Second, as Hartford responds, death caused by blood loss due to accidental dismemberment would not implicate a circulatory malfunction. Rather, death would be deemed to have been caused by the accidental bodily injury because, apart from the traumatic injury, the circulatory system operated normally. Here, in contrast, Shelley Hernandez suffered a leg fracture that was surgically repaired in July 2005. Two months later, while recovering and partially immobilized, the medical evidence suggests, she suffered a malfunction of her circulatory system, in the form of blood clotting or other matter coagulating in her blood, creating a mass that became a lung obstruction causing death. Here, Hartford maintains, the circulatory malfunction caused death, a circumstance excluded from coverage under the plan terms.

Again, we cannot say that Hartford's decision is not rational in light of the plan's provisions. We cannot find that the decision is not the result of a deliberate, principled reasoning process or that it is not supported by substantial evidence. We cannot therefore hold that the decision is arbitrary and capricious. Even if we were inclined to do so, we simply have no liberty to rewrite the terms of the plan. Accordingly, the district court's judgment is **AFFIRMED.**