Diana L. CAESAR, Plaintiff–Appellant,

v.

HARTFORD LIFE AND ACCIDENT
INSURANCE COMPANY,
Defendant–Appellee.

No. 10–4223.

United States Court of Appeals,
Sixth Circuit.

Jan. 13, 2012.

Before: SILER and KETHLEDGE,
Circuit Judges; ADAMS, District Judge.*

* The Honorable John R. Adams, United States
District Judge for the Northern District of Ohio, sitting by designation.

432

## ORDER

Diana L. Caesar appeals the district court's judgment on the administrative record upholding Hartford Life and Accident Insurance Company's termination of her long-term disability (LTD) benefits. Because we conclude that Hartford's decision was arbitrary and capricious, we reverse.

Caesar began working as a claims adjuster for the Allstate Corporation in 1973 and participated in Allstate's LTD insurance plan, issued by Hartford. Caesar stopped working in September 2003 due to severe back and right leg pain. On October 8, 2003, she underwent a lumbar laminectomy and partial discectomy to remove a large extruded disc fragment. The goal of the surgery, performed by Dr. Christopher Furey, was "relief of right leg pain." Caesar subsequently applied for LTD benefits, which Hartford approved effective January 14, 2004.

Caesar demonstrated gradual improvement after the surgery and was able to walk with a cane. Her condition began to worsen after a few months, however, and an MRI showed a recurrence of her disc herniation. Dr. Furey performed a lumbar revision and fusion on September 14, 2004. A March 31, 2005, CT scan revealed degenerative disc disease at the L4–L5 level with a successful fusion and no evidence of hardware failure. On June 23, 2005, Dr. Furey noted Caesar's leg pain had improved but that she suffered from "ongoing back pain," that she "continue[d] to remain disabled," and that it was "unlikely that she will be able to return to work." When Dr. Furey saw Caesar on December 29, 2005, he noted that Caesar was doing "fairly well" and had improved since before her surgery, although she had "baseline chronic low back pain." Dr. Furey's notes also reflect that Caesar developed a "foot drop" after the surgery and

began wearing an ankle-foot orthotic (AFO) because of weakness in her right ankle.

On August 19, 2005, Dr. Furey completed an Attending Physician Statement (APS) and a Physical Capacities Evaluation (PCE), indicating a primary diagnosis of spinal stenosis and secondary diagnoses of chronic back pain and leg pain and weakness. Dr. Furey stated that Caesar could sit, stand, and walk for up to thirty minutes at a time, up to one or two hours per day, and that she was "totally disabled permanently." On December 14, 2005, Hartford informed Caesar that she qualified as disabled under the "any occupation" standard and would continue to receive LTD benefits.

In July 2006, Hartford requested updated information from Caesar's treating physicians. In a PCE completed on August 28, 2006, Dr. Furey stated that Caesar could sit for one or two hours at a time up to four to six hours a day—an increase from the one-hour restriction he set forth just a month earlier—but repeated that Caesar's chronic pain and limited motion rendered her "permanently disabled." In January 2007, a Hartford employee reviewed Caesar's claim and concluded that these restrictions and limitations were supported by the record and that Caesar remained disabled.

After moving to the Columbus area, Caesar began seeing Dr. David Brandt as her primary physician. On February 7, 2007, Dr. Brandt completed a PCE and an APS, stating that Caesar could only sit for up to two hours and could not stand or walk in a workplace environment. After reviewing these forms, a Hartford employee again concluded that Caesar was disabled. Dr. Brandt completed another APS on August 25, 2007, giving a similar assessment of Caesar's physical capabilities (sitting no more than two hours a day and

standing for fifteen minutes every four hours), and stating that these restrictions were likely to be permanent.

During this time, Caesar saw another orthopedic specialist, Dr. Raymond Warupa, who treated her for a laceration and severe carpal tunnel syndrome on her left hand, and mild carpal tunnel and "trigger thumb" on her right hand. On February 18, 2008, Dr. Warupa performed a carpal tunnel release on Caesar's left hand and a right trigger thumb injection. After an office visit on June 24, 2008, Dr. Warupa noted that the left hand surgery was successful and that Caesar was contemplating surgery to address the carpal tunnel symptoms on her right hand.

Dr. Brandt also referred Caesar to Dr. David Hannallah, an orthopedic specialist, for her worsening lower back pain. According to Dr. Hannallah's notes on December 5, 2007, Caesar was experiencing numbness, tingling and weakness in both legs, she was unable to stand up straight or walk without a cane, she had "a poor straight line gait," she continued to wear an AFO on her right ankle, and she appeared "diffusely weak in her lower extremities." Dr. Hannallah ordered an MRI, which showed "[m]ultilevel facet degenerative change in the lumbar spine," a central disk protrusion at the L5–S1 level having a mass effect on a nerve root, a right foraminal disc protrusion and moderate right foraminal narrowing at the L4–L5 level, and "facet and ligamentum flavum hypertrophy." On December 26, 2007, Dr. Hannallah reviewed the MRI with Caesar and told her that the disc protrusions were mostly on the right side and did not explain the pain that had developed on her left side, that additional surgery was unlikely to relieve her back pain, and that she should consider physical therapy and pain management injections.

On July 24, 2007, Caesar's file was assigned to a new case examiner, Andrea Jolivet, who sent "functionality letters" to Drs. Brandt and Warupa, asking whether Caesar could work for eight hours with either sedentary or light duty work restrictions. Dr. Warupa responded that he agreed with both sets of restrictions, while Dr. Brandt responded that he agreed with neither. Dr. Brandt indicated that the restrictions should be amended to limit Caesar to no more than one half hour of sitting at a time or per day. Jolivet referred the file to a nurse to determine whether Dr. Brandt's restrictions and limitations were supported and, if not, whether a functional capacity evaluation (FCE) would be appropriate. The nurse recommended review by an orthopedic specialist, and Jolivet referred the file to an outside reviewer at Managing Claims, Managing Care (MCMC).

The MCMC reviewer, Dr. Joanne Werntz, completed a case report on February 22, 2008, concluding that Caesar would be able to perform sedentary work after she recovered from her carpal tunnel surgeries. When Dr. Werntz called Dr. Brandt, he stated that Caesar's pain was "real" and prevented her from sitting for more than one half hour every four hours, but Dr. Werntz found that this limitation "would be highly unusual ... based upon [Caesar's] type of surgery, the CT scan findings, and her stable clinical exams." When Dr. Werntz updated her case report on September 22, 2008, she also contacted Dr. Hannallah, but he responded that he did not give specific work restrictions and would rely on FCE results if asked to do so. Dr. Warupa told Dr. Werntz that Caesar should be able to return to work with minimal restrictions with regard to her hands. Noting that Caesar's chronic back pain had not previously limited her from working, Dr. Werntz concluded that Caesar was capable of working in a full-time

sedentary position with certain additional restrictions, such as use of an ergonomic chair and no standing or walking for more than five to ten minutes at a time. On October 22, 2008, Hartford informed Caesar that she no longer qualified as disabled under the "any occupation" standard and identified two sedentary claims examiner positions for which she would be qualified.

Caesar retained counsel and appealed. She supplemented her medical file with the results of an FCE, which indicated that she was unable to perform even sedentary work, a vocational assessment, and additional medical records. Hartford sent the file to another company for independent reviews by three physicians: an internist, a psychiatrist, and an orthopedic specialist, Dr. William Andrews. Dr. Andrews, while not expressly disagreeing with the findings of the FCE, nonetheless concluded that Caesar was capable of working in a full-time sedentary capacity. Based primarily on this analysis, Hartford upheld its denial of benefits. The district court granted judgment for Hartford on the administrative record, and this appeal followed.

■ We review the district court's decision de novo and apply the same legal standard as the district court. *Cooper v. Life Ins. Co. of N. Am.*, 486 F.3d 157, 164 (6th Cir.2007). When, as here, the plan administrator is given discretionary authority to determine benefit eligibility, we apply a deferential "arbitrary-and-capricious" standard of review. *Id.* "Under this standard, we will uphold the plan administrator's decision if it is the result of a deliberate, principled reasoning process and is rational in light of the plan's provisions." *Id.* at 165 (internal quotation marks and citation omitted). Because Hartford both pays long-term disability benefits and determines eligibility for those benefits, however, we consider this conflict of interest as "one factor" in evalu-

ating its decision to deny benefits. *See Metro. Life Ins. Co. v. Glenn,* 554 U.S. 105, 117, 128 S.Ct. 2343, 171 L.Ed.2d 299 (2008).

■ Based on our review of the administrative record, we conclude that Hartford's termination of Caesar's LTD benefits was arbitrary and capricious. Hartford found that Caesar was able to perform full-time sedentary work, a classification that involves "mostly sitting" and requires an employee to stand, walk, and lift "occasionally" (up to one third of the work day). But, according to the FCE and reports from Caesar's treating physicians, Caesar cannot sit for an eight-hour work day, even with intervals to stand, walk, or otherwise change position, and can only stand or walk for brief intervals.

While noting that the FCE showed that Caesar's current physical capacities were "in the below sedentary strength range," Dr. Andrews opined that Caesar was "capable of working in a full time sedentary capacity" with certain additional restrictions, such as no standing or walking for more than fifteen minutes at a time. Dr. Andrews explained his disagreement with the FCE by stating that, in the sedentary capacity he described, "there are such minimal strength requirements that the claimant would be capable of this activity level." As noted above, however, a sedentary position involves "mostly sitting" as well as occasional standing, lifting, and walking. The occupational therapist who conducted the FCE concluded that Caesar could sit only "occasionally" and could not tolerate even occasional standing or walking, findings that would render Caesar unable to perform sedentary work. These findings were consistent with the restrictions and limitations provided by Drs. Furey and Brandt.

An FCE is generally a "reliable and objective method of gauging the extent one can complete work-related tasks." *Huffaker v. Metro. Life Ins. Co.*, 271 Fed. Appx. 493, 500 (6th Cir.2008) (internal quotation marks omitted); *see Brooking v. Hartford Life & Accident Ins. Co.*, 167 Fed.Appx. 544, 549 (6th Cir.2006) (describing an FCE as "objective evidence" of the claimant's back pain). The occupational therapist concluded that Caesar demonstrated overall good effort during the FCE and that her "subjective reports of pain and associated disability" were "both reasonable and reliable." The occupational therapist noted that Caesar showed objective signs of pain, such as an antalgic gait, shifting in her seat, grimacing, and using a wheelchair escort to her car after the three-hour exam due to pain and fatigue. The only explanation that Dr. Andrews offered for his disagreement with the FCE was his factually incorrect statement that its findings were consistent with the requirements of sedentary work, a position that was restated by Hartford in its denial of Caesar's appeal. The rejection of the FCE without a reasoned explanation supports a finding that the termination of Caesar's LTD benefits was arbitrary and capricious. *See Leger v. Tribune Co. Long Term Disability Benefit Plan*, 557 F.3d 823, 834–35 (7th Cir.2009) (concluding that the insurer acted in an arbitrary and capricious manner by failing to explain its disagreement with the results of the FCE); *Brooking*, 167 Fed.Appx. at 549 (concluding that the insurer acted in an arbitrary and capricious manner by failing to account for the findings of the FCE).

Caesar also argues that Hartford acted arbitrarily and capriciously by disregarding the opinions of her treating physicians and relying on a file review rather than an independent medical examination. Although plan administrators need not accord special weight to the opinions of a treating physician, they "may not arbitrarily disregard reliable medical evidence proffered by a claimant, including the opinions of a treating physician." *Cooper*, 486 F.3d at 166–67 (citation omitted). Thus, "a plan may not reject summarily the opinions of a treating physician, but must instead give reasons for adopting an alternative opinion." *Elliott v. Metro. Life Ins. Co.*, 473 F.3d 613, 620 (6th Cir.2006). Dr. Furey, who performed Caesar's two back surgeries, consistently stated that Caesar was totally disabled and that her limitations were permanent. Dr. Brandt, Caesar's primary physician, told Dr. Werntz that Caesar could only sit for one half hour every four hours, that she needed to lie down frequently during the day, and that she could not work. Neither Dr. Werntz nor Dr. Andrews adequately explained their disagreement with these opinions.

Dr. Werntz opined that, based on the clinical exams, which showed only right anterior tibialis weakness, and the March 2005 CT scan, which showed no new or recurrent disk herniation or hardware failure, Caesar "would not be considered totally disabled from any occupation and she could return to work with appropriate restrictions." But Dr. Furey was looking at these same findings—his clinical exams and the CT scan—when he concluded that Caesar was totally disabled. And although Dr. Werntz stated that the sitting limitation identified by Dr. Brandt would be "unusual," she acknowledged that there was no evidence, such as surveillance video, to contradict it. Additionally, Dr. Werntz did not discuss whether Caesar's myriad other health problems might limit her recovery or how the various irregularities shown in the December 2007 MRI would affect her functionality.

The review conducted by Dr. Andrews was even more cursory. Dr. Andrews did

not acknowledge the limitations recommended by Drs. Brandt and Furey, which were generally consistent with the findings of the FCE. His failure to discuss why he disagreed with their assessment of Caesar's functional limitations significantly "diminishes the strength of [his] conclusions." *Hunter v. Life Ins. Co. of N. Am.,* 437 Fed.Appx. 372, 379 (6th Cir.2011). This is especially so because Dr. Andrews, like Dr. Werntz, did not examine Caesar, he did not speak with any of Caesar's treating physicians, and he appears not to have thoroughly reviewed the record, as demonstrated by his failure to note the frequent references to Caesar's foot drop. *See Calvert v. Firstar Fin., Inc.,* 409 F.3d 286, 296–97 (6th Cir.2005). Under these circumstances, the failure of the independent review physicians to adequately explain why they rejected the opinions of Caesar's treating physicians supports a finding that Hartford's decision was arbitrary and capricious. *See Cooper,* 486 F.3d at 169–70; *Hunter,* 437 Fed.Appx. at 379. Additionally, given that both of the independent review physicians at least implicitly discredited Caesar's subjective complaints of pain, Hartford's reliance on a file review rather than a physical examination further supports a finding that its decision was arbitrary and capricious. *See Smith v. Cont'l Cas. Co.,* 450 F.3d 253, 263–64 (6th Cir.2006); *Calvert,* 409 F.3d at 295.

Finally, Hartford terminated Caesar's LTD benefits even though there was no evidence that her condition had improved since the time that it found her disabled under the "any occupation" standard, another factor rendering its decision arbitrary and capricious. *See Kramer v. Paul Revere Life Ins. Co.,* 571 F.3d 499, 507 (6th Cir.2009) (concluding that the plan administrator acted arbitrarily by canceling benefits "that had been paid for some five years based upon the initial determination of total disability" absent any medical evidence of improvement). In the two years following her back surgeries, Dr. Furey consistently stated that Caesar was totally disabled and that her limitations were permanent, and Hartford awarded Caesar benefits on this basis. There is no evidence that Caesar's condition improved after that time, and there was no other evidence that would support a change in her eligibility, such as newly acquired skills or new information about her medical condition. *See Morris v. Am. Electric Power Long–Term Disability Plan,* 399 Fed.Appx. 978, 984–85 (6th Cir.2010). Under these circumstances, Hartford's previous payment of benefits weighs against its decision to terminate those benefits. *See id.* at 985.

Because the evidence in the administrative record shows that Caesar is disabled under the provisions of the policy, we reverse the decision of the district court. We remand the case to the district court to grant Caesar's petition to reverse the administrative decision and award benefits plus interest from the date on which her benefit payments ceased.