NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0725n.06

No. 12-2062

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED
*Aug 06, 2013*
DEBORAH S. HUNT, Clerk**

EDWARD FURA,                                    )
                                                )
    Plaintiff-Appellee,                         )
                                                )
v.                                              )    ON APPEAL FROM THE UNITED
                                                )    STATES DISTRICT COURT FOR
FEDERAL EXPRESS CORP. LONG TERM                 )    THE EASTERN DISTRICT OF
DISABILITY PLAN, et al.,                        )    MICHIGAN
                                                )
    Defendants-Appellants,                      )

Before: GIBBONS, SUTTON, and KETHLEDGE, Circuit Judges.

KETHLEDGE, Circuit Judge. Edward Fura sued the Federal Express Long Term Disability Plan, the Federal Express Corporation, and Aetna Life Insurance Company, alleging that they terminated his long-term disability benefits in violation of the Employee Retirement Income Security Act of 1974. The district court granted summary judgment to Fura and reinstated his benefits. We vacate the court's judgment and remand the case to Aetna for a full and fair review of Fura's claim.

I.

Edward Fura worked for the Federal Express Corporation as a vehicle technician. Fura was covered by FedEx's long-term disability plan, which was governed by the Employee Retirement Income Security Act of 1974. Aetna was the Claims Paying Administrator of FedEx's plan, which

empowered Aetna with the "sole and exclusive discretion in . . . matters relating to the eligibility of a claimant for benefits under the Plan."

Fura's medical problems began in 2005, when he had back surgery to remove a tumor in his spinal cord. This surgery did not cure Fura's back pain. Further examination revealed degenerative changes in his lumbar spine and disk herniation, so Fura had a second surgery in January 2007. He did not return to work after this surgery, but instead received short-term disability benefits through August of that year. In August, Fura transitioned to FedEx's long-term disability plan. Under the long-term plan, employees who are unable to perform their regular duties due to "a medically-determinable physical or functional impairment" are entitled to occupational disability benefits for up to two years. To receive benefits after two years, the plan requires that an employee be totally disabled, which means that the employee is completely unable to work at least 25 hours per week because of a "medically-determinable physical or functional impairment[.]"

In February 2008, the Social Security Administration determined that Fura was disabled and awarded him benefits retroactive to his second back surgery. Fura underwent a third spinal surgery in February 2009, but his back problems continued. Thus, near the two-year deadline of August 2009, Aetna asked Fura to prove that he was totally disabled. Under the terms of the plan, a covered employee can prove that he is totally disabled only through "significant objective findings" from medical examinations, test results, and "anatomical, physiological or psychological abnormalities which can be observed apart from the individual's symptoms." Fura then submitted records from his treating physicians. These records described Fura's back problems, as well as a number of other ailments. Aetna sent Fura's medical records to an orthopedic surgeon, Dr. Wallquist, and a

neurologist, Dr. Goldberg, for review. Aetna did not request an in-person examination of Fura. Each doctor found that Fura could work in a sedentary capacity for 25 hours per week, so Aetna denied Fura's claim.

Fura appealed this decision to the Aetna Appeals Committee. He then submitted more evidence of his back and leg ailments. Records from Dr. Richard Easton show that Fura suffers from severe back pain resulting from degenerative changes in his lumber spine and complications from his prior fusion surgery. Dr. Easton's April 2009 postoperation checkup of Fura's third back surgery noted radiating pain and "weakness, numbess, and stiffness" in the legs. Dr. Easton recommended that Fura refrain from "bending, carrying, driving, lifting greater than 10 pounds, pulling, pushing, reaching, sitting, standing, and twisting motions" for six months. And Dr. Easton's October 2009 report reveals that Fura's range of motion was restricted due to his pain, complications from his back surgery, and atrophy in his stomach muscles. All of Fura's symptoms "were worse with bending, changing body position, . . . sitting, . . . [and] standing," and his condition was complicated by "bowel/bladder dysfunction."

Fura's medical records also show severe neurological ailments. Dr. Jodi Ganley, a neurologist and one of Fura's treating physicians, diagnosed Fura with demyelinating sensory motor neuropathy and radiculopathy—that is, nerve damage. This degenerative condition caused pain and numbness in Fura's legs and impaired his ability to walk, sit, stand, and drive. Dr. Ganley's clinical findings revealed that Fura had a "lack of sensation in the lower half of his body," that his balance was poor, his legs were weak, that standing or sitting caused numbness and pain, that Fura required a walker to get around, and that he had difficulty arising from a chair.

Finally, Fura's medical records showed severe lymphedema—that is, swelling caused by excess fluid trapped in the tissues of Fura's legs. In June 2009, Dr. Ganley noted lymphedema in Fura's feet and legs. Dr. Riutta, who treated Fura's lymphedema, wrote a letter to Aetna in July 2009 stating that Fura's condition required constant care.

All of Fura's treating physicians, including doctors Ganley, Riutta, and Easton, reported that he cannot work at least 25 hours per week.

Aetna again submitted Fura's file to physicians for review. In January 2010, Dr. Cohan, a neurologist, and Dr. Blumberg, an orthopedic surgeon, agreed with Aetna's other reviewing physicians that Fura was able to work for at least 25 hours per week in a sedentary job if he could change positions throughout the day. Thus, in February 2010, the Aetna Review Committee upheld the denial of Fura's total disability claim.

Fura sued the FedEx Corporation Long Term Disability Plan, FedEx, and Aetna on grounds that the denial of benefits violated ERISA. That district court agreed and reinstated Fura's benefits.

This appeal followed.

## II.

We review de novo a district court's decision based on an administrative record. *See Whitaker v. Hartford Life & Accident Ins. Co.*, 404 F.3d 947, 949 (6th Cir. 2005). When an employee-benefit plan grants the plan administrator discretion to determine a claimant's eligibility for benefits, we can reverse that decision only if it is arbitrary or capricious. *See Gismondi v. United Techs. Corp.*, 408 F.3d 295, 298 (6th Cir. 2005).

Under the arbitrary and capricious standard, we uphold the administrator's decision "if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." *Glenn v. MetLife*, 461 F.3d 660, 666 (6th Cir. 2006) (internal quotation marks omitted). Several lodestars guide our decision: "the quality and quantity of the medical evidence"; the existence of any conflicts of interest; whether the administrator considered any disability finding by the Social Security Administration; and whether the administrator contracted with physicians to conduct a file review as opposed to a physical examination of the claimant. *Bennett v. Kemper Nat. Servs., Inc.*, 514 F.3d 547, 552–53 (6th Cir. 2008).

## A.

Aetna contracted with two physicians to review Fura's file on appeal: Drs. Cohan and Blumberg. These doctors, unlike Dr. Goldberg and Dr. Wallquist, reviewed Fura's entire file. Dr. Cohan, a neurologist, opined that "[t]here is no evidence that [Fura's] pain is of sufficient severity" to preclude sitting or standing "for a period of time which would allow for performance of sedentary work" if Fura could change positions as needed. Further, Dr. Cohan noted that Fura's arms were not impaired, and that he was ambulatory with a walker. Similarly, Dr. Blumberg opined that "there is no evidence that [Fura] cannot stand, sit, [and] ambulate. There is no evidence he cannot use his upper extremities . . . . He is therefore capable of [] occupational activities for a minimum of 25 hours per week."

The Aetna physicians' conclusions suffer from some serious flaws. As an initial matter, it is not clear why Dr. Cohan determined that Fura's pain would permit him to work 25 hours per week. Dr. Cohan never examined Fura, so he had no first-hand knowledge of Fura's pain. And

Fura's treating physicians tell a different story. Dr. Ganley noted that "the clinical data" and her "own observations" showed that "sitting or standing causes [] Fura to experience numbness and pain." Dr. Easton noted that Fura's pain was "worse with sitting, standing, [and] walking[.]" Dr. Cohan did not explain why he discounted these opinions. Of course, we do not defer to the opinions of treating physicians. *See Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003). But "a plan may not reject summarily the opinions of a treating physician, [and] must instead give reasons for adopting an alternative opinion." *Evans v. Unumprovident Corp.*, 434 F.3d 866, 877 (6th Cir. 2006). Dr. Cohan did not do so here.

More critically, the Aetna physicians failed to address significant material evidence. First, no reviewing physician addressed Dr. Ganley's notes that Fura is losing sensation in his arms. FedEx now claims that this condition is not serious, but no medical professional submitted that opinion to Aetna. Second, no Aetna physician addressed the evidence that Fura's range of motion is restricted. Even if Fura can get around with a walker, overwhelming medical evidence indicates that he can do so only with difficulty. Drs. Ganley and Easton both recorded numbness in Fura's legs and difficulties with balance and stability. Each doctor also recorded restrictions on Fura's ability to sit, stand, and drive—all elements of a sedentary workday. The omissions do not stop there. No reviewing physician discussed the progressive nature of Fura's ailments, his impaired bowel and bladder function, or the impact of his lymphedema on his ability to do sedentary work. And Aetna's decision to rely on file reviews makes these omissions all the more troubling because a "plan's decision to conduct a file-only review . . . [may] raise questions about the thoroughness and

accuracy of the benefits determination." *Elliott v. Metro. Life Ins. Co.*, 473 F.3d 613, 621 (6th Cir. 2006) (quotation marks omitted).

Neither Aetna nor the reviewing physicians were required to discuss every piece of evidence in the record. But Aetna's decision to terminate Fura's benefits "must be consistent with the quantity and quality of the medical evidence that is available on the record." *Moon v. Unum Provident Corp.*, 405 F.3d 373, 381–82 (6th Cir. 2005) (internal quotation marks omitted). Here, Aetna relied on file reviews that failed to confront significant evidence of total disability. In light of this evidence, Aetna did not give a reasoned explanation for its decision.

B.

Remand to the plan administrator is appropriate "where the problem is with the integrity of the plan's decision-making process, rather than that a claimant was denied benefits to which he was clearly entitled." *Elliott*, 473 F.3d at 622 (brackets and quotation marks omitted). Here, Aetna relied on reviewing physicians' opinions that did not address significant evidence of total disability. Without an explanation for this evidence, we cannot find Aetna's decision to be reasoned. But neither can we say, on this record, that Fura is totally disabled as a matter of law. Certain aspects of his treating physicians' reports, for example, appear conclusory. Remand, rather than outright affirmance, is thus the appropriate outcome.

On remand, Fura will also be free to supplement the record with the Social Security Administration's decision granting him benefits as well as the record in that case. Without the decision and record, Aetna had no way of evaluating the reasons for the SSA's award. Once the decision is part of the record Aetna can evaluate its reasoning to determine whether the award is

persuasive evidence of total disability. Fura may also wish to ask his physicians to explain more fully the medical evidence supporting their conclusions.

The district court's judgment is vacated, and the case remanded for entry of an order requiring Aetna to conduct a full and fair review of Fura's disability claim.