**Berkeley JENSEN, Plaintiff,**

**v.**

**AETNA LIFE INSURANCE COMPANY, Federal Express Corporation, et al., Defendants.**

No. 13–2091.

United States District Court,
W.D. Tennessee,
Western Division.

Signed July 23, 2014.

D. Seth Holliday, Eric Buchanan & Associates, Chattanooga, TN, for Plaintiff.

Colby S. Morgan, Jr., Fedex Corporation, Memphis, TN, for Defendants.

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS

SAMUEL H. MAYS, JR., District Judge.

On February 12, 2013, Plaintiff Berkeley Jensen ("Jensen") filed his Complaint. (Compl., ECF No. 1.) Relying on 29 U.S.C. § 1132(a)(1)(B), Jensen seeks judicial review of benefit denials under his ERISA-disability plan. (Compl. at 1.) Defendants Federal Express Corporation ("FedEx"), Federal Express Corporation Short Term Disability Plan ("STD Plan"), and Federal Express Corporation Long Term Disability Plan ("LTD Plan") answered on March 7, 2013. (FedEx Ans., ECF No. 8.) Defendant Aetna Life Insurance Company ("Aetna") answered on March 18, 2013. (Aetna Ans., ECF No. 11.) FedEx submitted the Administrative Record on June 25, 2013. (A.R., ECF No. 25.)

On October 31, 2013, Defendants filed a Motion for Summary Judgment. (Mot. Summ. J., ECF No. 33.) On October 31, 2013, Jensen filed a Motion for Judgment on the Pleadings. (Mot. J. Plead., ECF No. 31.) On November 29, 2013, Jensen filed a Response to the Motion for Summary Judgment. (Jensen Resp., ECF No. 35.) Defendants replied on December 9, 2013. (Defs. Reply, ECF No. 38.) Defendants filed their Response to the Motion for Judgment on the Pleadings on November 29, 2013. (Defs. Resp. ECF No. 36.) Jensen replied on December 9, 2013. (Jensen Reply, ECF No. 37.)

For the following reasons, Defendants' Motion for Summary Judgment is GRANTED and Plaintiff's Motion for Judgment on the Pleadings is DENIED.

## I. Background

Jensen was employed as an airplane dispatcher by FedEx between 1990 and 2012. (A.R., ECF. No. 25-2, at 14; A.R., ECF No. 25-3, at 105, 171; FedEx Ans., ECF No. 8, at ¶ 12.) Jensen has been treated for migraine pain for more than a decade. (A.R., ECF No. 25-2, at 169.) In 2000,

Dr. Stephen Landy ("Landy"), a board-certified neurologist and headache specialist, diagnosed Jensen with "chronic migraines." (*Id.* at 167–69, 174.) The International Headache Society defines chronic migraines as headaches lasting four or more hours, occurring on fifteen or more days a month. (*Id.* at 169.)

Since 2000, Jensen has tried several preventive regimes, including non-pharmacological plans and prophylactic medications. (A.R., ECF No. 25–2, at 175–76.) Jensen takes narcotic medication to treat chronic migraine pain and to lessen migraine duration. (*Id.* at 176; A.R., ECF No. 25–3, at 5, 26.)

In 2011, Landy referred Jensen to pain management specialist Dr. John Milnor ("Milnor"), who continued to prescribe narcotics for Jensen's migraines. (A.R., No. 25–3, at 5, 27.) Milnor diagnosed Jensen with chronic daily headaches, which sometimes "accelerate" into incapacitating migraines. (*Id.* at 7.) Milnor prescribed a slow-release narcotic pain reliever to treat ongoing headaches and a faster-release narcotic to abort any migraine flares. (*Id.* at 8.)

Landy believes that the migraines have disabled Jensen and that he is unable to perform a normal forty-hour workweek. (A.R., ECF No. 25–2, at 177.) Landy also states that Jensen would be chronically absent four or more workdays a month due to migraines. (A.R., ECF No. 25–3, at 1.) Landy opines that this condition is permanent. (A.R., ECF No. 25–3, at 1.) Milnor agrees with Landy's disability conclusion and states that Jensen is unable to do "any meaningful work at FedEx." (*Id.* at 49.) Milnor specifically testified that Jensen will be migraine-disabled for one to two days each week. (*Id.* at 8–10.) Milnor also believes the disabling migraines are permanent. (*Id.* at 11.)

From March 24, 2012, to October 12, 2012, Jensen missed a total of two hundred and two days of work due to migraine pain. (A.R., No. 25–3, at 96.) Jensen wrote to FedEx that the intensity and frequency of the migraines is treatable only by opiate medication. (Exhibit 2, ECF No. 32–2, at 2.) FedEx policy prevents him from working while on that medication. (*Id.*)

Jensen participated in both the FedEx STD Plan and the FedEx LTD Plan through his employment (collectively, the "Plans"). (FedEx Ans., ECF No. 8, at ¶ 12.) Aetna is the claims-paying Administrator of the Plans. (A.R., ECF No. 25–3, at 79; FedEx Ans., ECF No. 8, at ¶ 8.) Aetna makes eligibility determinations for the Plans. (*Id.*) FedEx self-funds the Plans. (A.R., ECF No. 25–5, at 66; A.R., ECF No. 25–7, at 57.) Jensen filed for STD benefits for the period beginning March 24, 2012. (A.R., ECF No. 25–2, at 2–3.)

The Plans require that any alleged disability be "substantiated by significant objective findings which are defined as signs which are noted on a test or medical exam and which are considered significant anatomical, physiological or psychological abnormalities which can be observed apart from the individual's symptoms." (A.R., ECF No. 25–7 at 21–22; A.R., ECF No. 25–5, at 35–36.)

The STD Plan pays benefits for "Occupational Disability," the inability to perform the duties of one's regular employment. (A.R., ECF No. 25–5, at 35–36.) STD benefits last up to twenty-six weeks. (*Id.* at 46.) The LTD Plan pays benefits for "Occupational Disability" or "Total Disability." (A.R., ECF No. 25–7, at 21–22.) "Total Disability" is the inability to perform any compensated employment for twenty-five hours weekly. (*Id.* at 29.) The LTD Plan pays Occupational Disabili-

ty benefits for a maximum of twenty-four months. The LTD Plan pays Total Disability benefits up to the maximum age of sixty-five. (*Id.* at 24, 37.)

Jensen timely applied for STD benefits for the period from March 24, 2012, to October 11, 2012. (FedEx Ans., ECF No. 8, at ¶ 15.) Aetna denied his claim on May 30, 2012, effective March 24, 2012. (A.R., ECF No. 25–2, at 4; A.R., ECF No. 25–3, at 90.) Jensen timely appealed and was denied on November 19, 2012. (A.R., ECF No. 25–3, at 94; A.R., ECF No. 25–1, at 2.) The initial denial stated that there were "no objective findings to support a functional impairment." (A.R., ECF No. 25–2, at 4.) Denial of the appeal cited "a lack of significant objective findings to substantiate a claim." (A.R., ECF No. 25–1, at 2; A.R., ECF No. 25–3, at 173.)

Jensen applied for LTD benefits on June 20, 2012. (A.R., ECF No. 25–3, at 65, 71.) Aetna denied that claim, stating that Jensen had not exhausted his STD benefits. (A.R., ECF No. 25–1, at 3.) The LTD plan stipulated that benefits are granted only once a participant has exhausted STD benefits. (*Id.*; Aetna Ans., ECF No. 11, at ¶ 17.) During this time, Jensen applied for and was granted disability benefits under the Social Security Administration for the period beginning December 2012. (Exhibit 1, ECF No. 32–1, at 1.)

## II. Jurisdiction

Jensen seeks to recover short-term and long-term disability plan benefits governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B). Under 29 U.S.C. § 1132(e)(1), "the district courts of the United States shall have exclusive jurisdiction of civil actions brought by … a participant" in an ERISA-governed plan.

This court has federal question jurisdiction under 28 U.S.C. § 1331.

## III. Standard of Review

■■■ "Because the role of a district court in ERISA matters is not to determine whether issues of fact exist for trial, but to review the administrative record before it, district courts should more properly characterize their role in such proceedings as encompassing elements of both bench trials and summary judgments." *Gibson v. Prudential Ins. Co. of Am.*, 513 F.Supp.2d 950, 956 (E.D.Tenn.2007). A denial of ERISA benefits is "to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). "When … an ERISA plan grants the plan administrator discretionary authority to determine benefit eligibility, benefit denials are reviewed under a deferential arbitrary-and-capricious standard." *O'Callaghan v. SPX Corp.*, 442 Fed.Appx. 180, 183 (6th Cir.2011).

■■■ "Despite this deferential standard, however, [ ] review is no mere formality.… Instead, [a court is] required to review 'the quality and quantity of the medical evidence and the opinions on both sides of the issues.'" *Glenn v. MetLife,* 461 F.3d 660, 666 (6th Cir.2006) (aff'd, 554 U.S. 105, 128 S.Ct. 2343, 171 L.Ed.2d 299 (2008)) (quoting *McDonald v. Western–Southern Life Ins. Co.*, 347 F.3d 161, 172 (6th Cir.2003)). The plaintiff "carries the burden of showing that she was disabled." *Rose v. Hartford Fin. Servs. Group,* 268 Fed.Appx. 444, 452 (6th Cir.2008); *accord Tracy v. Pharmacia & Upjohn Absence Payment Plan,* 195 Fed.Appx. 511, 518 (6th Cir.2006).

## IV. Analysis

■ ERISA plans are products of their drafting. A plan's requirements bind participants. *See Cooper v. Life Ins. Co. of N. Am.*, 486 F.3d 157, 166 (6th Cir.2007). Courts are bound by plan specifications, and Administrators have discretion to interpret those provisions. *See Curry v. Eaton Corp.*, 400 Fed.Appx. 51, 66 (6th Cir.2010); *Firestone*, 489 U.S. at 115, 109 S.Ct. 948.

■ Eligibility decisions by Administrators are not arbitrary and capricious if they are "rational in light of the plan's provisions." *Miller v. Metro. Life Ins. Co.*, 925 F.2d 979, 984 (6th Cir.1991) (quoting *Daniel v. Eaton Corp.*, 839 F.2d 263, 267 (6th Cir.1988). "When it is possible to offer a reasoned explanation based on the evidence, for the particular outcome, that outcome is not arbitrary or capricious." *Davis v. Kentucky Fin. Cos. Ret. Plan*, 887 F.2d 689, 693 (6th Cir.1989)). Courts consider no evidence beyond what the Administrator possessed for the claim. *See Perry v. Simplicity Eng'g, a Div. of Lukens Gen. Indus., Inc.*, 900 F.2d 963, 967 (6th Cir.1990).

Jensen argues that he is entitled to judgment on the pleadings because (1) he is disabled under the Plan terms; (2) the Plan administrators denied coverage arbitrarily and capriciously; and (3) the Plan administrators failed to provide a reasoned explanation in relying on non-examining medical consultants. (Memo. Mot. J. Plead., ECF No. 32, at 9.) Defendants argue that they are entitled to summary judgment because: (1) Jensen is not disabled under either Plan definition; (2) denial was not arbitrary and capricious; and (3) Aetna could rely on non-examining, reviewing physicians in determining disability status. (Mot. SJ., ECF No. 33, at 7, 9, 12; Resp. Mot. J. Plead., ECF No. 36, at 4.)

### A. Aetna's Denial of STD Benefits

Under both Plans, Aetna has fiduciary discretionary authority to determine eligibility for benefits. (A.R. § 5. 2, ECF No. 25–5; A.R. § 6.1, ECF No. 25–7.) The question is whether Aetna's denial of benefits was arbitrary and capricious.

The Sixth Circuit considers several factors in arbitrary and capricious review:

> (1) the quality and quantity of the medical evidence;
>
> (2) the existence of any conflicts of interest; (3) whether the administrator considered any disability finding by the Social Security Administration; and (4) whether the administrator contracted with physicians to conduct a file review as opposed to a physical examination of the claimant.

*Fura v. Fed. Exp. Corp. Long Term Disability Plan*, 534 Fed.Appx. 340, 342 (6th Cir.2013).

Applying those criteria, Aetna's denial of STD benefits was not arbitrary and capricious.

### 1. Quality and Quantity of the Medical Evidence

■ Courts must evaluate the quality and quantity of the medical evidence and the opinions on both sides in reviewing ERISA claims. *DeLisle v. Sun Life Assur. Co. of Canada*, 558 F.3d 440, 446 (6th Cir.2009). The quantity and quality of Jensen's medical evidence does not support an arbitrary and capricious finding.

For benefit eligibility, the STD Plan requires (1) direct care of a physician during the entire period of the disability; and (2) a disability that is "substantiated by significant objective findings, which are defined as signs which are noted on a test or medical exam and which are considered significant anatomical, physiological or

psychological abnormalities which can be observed apart from the individual's symptoms." (A.R., ECF No. 25–3, at 100.) Some possible means of objective proof are "medical examination findings, test results, x-ray results, [or] observation of anatomical, physiological or psychological abnormalities." (*Id.* at 102; A.R., ECF No. 25–4, at 6.)

The record submitted to Aetna does not contain objective proof. Jensen's first application included physician notes, physician letters, reports of patient testimony about pain, medication product inserts, and blood work data. (A.R., ECF No. 25–2, at 4.) Aetna denied the claim for a lack of significant objective findings. (*Id.*)

The objective tests Jensen provided in his initial application did not reveal abnormalities. Jensen's blood work data was "unremarkable," with neurological examination findings all "unchanged" and vital signs "stable." (*Id.* at 134.) His blood work generally was not abnormal, except for low vitamin D and high cholesterol. (A.R., No. 25–3, at 39–42.) Milnor's physician notes reveal medications and dosages prescribed, as well as the patient's own reports of pain. (*Id.* at 134, 139, 141.) The notes sometimes refer to Jensen's response to the medications, but without detailing other observed signs of disability from the migraines. (*Id.* at 151–52.) Neither of those notations reflects medical testing or examination findings.

Jensen also self-reported, in a letter to FedEx, his sensitivity to light, depression, diarrhea/constipation, sleeplessness, fatigue, nausea, vomiting, and sensitivity to noise. (Exhibit 2, ECF No. 32–2, at 2.) Those conditions are not elsewhere reported in any medical examination record. (A.R., ECF No. 25–2, at 4.)

The Headache Impact Test (the "Test"), referred to in Landy's note dated April 5, 2012 as indicating a "very severe disabili-ty" score, is also subjective, relying on patient self-reporting. (A.R., ECF No. 25–3, at 38.) Self-reporting is not objective proof. *Allen v. UNUM Life Ins. Co. of Am.*, 142 Fed.Appx. 907, 912 (6th Cir. 2005).

The Test includes several questions on pain, allowing the patient to answer by circling a response on a continuum. (*Id.* at 50.) The Test relies strictly on patient judgment in responding to the questions. No examination by the physician produces any data for the Test. The numerical responses are based solely on subjective patient estimation of pain severity. The pain rating scale included in the Administrative Record uses similar self-reporting. (A.R., ECF No. 25–2, at 141.)

The additional records provided in Jensen's appeal of the STD benefit denial do not evince objective proof. Landy's neurological examination statuses from 1/6/11, 4/6/11, 7/6/11, 10/3/11, 1/6/12, and 6/5/12 were all "unchanged." (*Id.* at 130–32.) Milnor's patient notes from 6/4/12, 6/19/12, 7/12/12, and 8/8/12 are only records of medication regimes, patient pain reports, and patient frustration with the medications. (*Id.* at 155–57, 161–62.)

The sworn statements from Landy and Milnor do not present objective findings. Landy's diagnostic process is essentially subjective: "patients would have to specifically answer appropriately to certain questions in order to have the diagnosis of migraine." (*Id.* at 172.) Landy characterizes the subjective patient responses as objective: "when you take all of those subjective criteria and then put them into a place regarding do they fulfill international headache classification criteria for migraine, then they become objective." (*Id.*) Although objective categories of headache diagnosis may exist, the data used in the diagnosis must also itself be

objective to produce objective findings consistent with plan terms. *Huffaker v. Metro. Life Ins. Co.,* 271 Fed.Appx. 493, 501 (6th Cir.2008). An essentially subjective data collection cannot produce an objective diagnosis. *Id.*

Milnor's testimony is similarly subjective, describing mainly the diagnosis of chronic migraines and medications prescribed. (A.R., ECF No. 25–3, at 7, 17.) Milnor's testimony includes no record of medical examination, clinical data, or testing related to migraines. Elsewhere, Milnor stipulated that "medical science has no meter to directly measure pain or the total amount of disability the pain actually causes." (*Id.* at 29.) Milnor's diagnostic method is subjective: "I have developed a reasonably acute ability to determine whether the patient has the level of pain he describes." (*Id.*) Milnor gathers much of the data for his diagnosis "via history," which is also categorically subjective, the result of patient self-reporting. (*Id.*)

Because the weight of medical evidence is subjective, it does not support a conclusion that Aetna's decision was arbitrary and capricious.

### 2. Conflict of Interest

The Sixth Circuit has found a possible conflict of interest when a corporation is "both the decision-maker, determining which claims are covered, and also the payor of those claims." *Calvert v. Firstar Fin., Inc.,* 409 F.3d 286, 292 (6th Cir.2005). No conflict exists here. Aetna is not the payor of the claims. (A.R., ECF No. 25–5, at 66; A.R., ECF No. 25–7, at 57.) Aetna makes eligibility determinations without funding the STD or the LTD Plan. (A.R., ECF No. 25–3, at 79; FedEx Ans., ECF No. 8, at ¶ 8.) Without a dual role, there is no *Calvert* conflict. *See Hansen v. Metro. Life Ins. Co.,* 192 Fed.Appx. 319, 321 (6th Cir.2006).

### 3. Social Security Benefit Consideration

Whether a plaintiff received Social Security disability bears on a court's arbitrary-and-capricious determination. *Bennett v. Kemper Nat'l Servs.,* 514 F.3d 547, 554 (6th Cir.2008). On December 4, 2012, Jensen received Social Security disability status. (Exhibit 1, ECF No. 32–1, at 1.) Jensen had not received Social Security disability status when Aetna denied his appeal. District courts "may not admit or consider any evidence not presented to the administrator." *Wilkins v. Baptist Healthcare Sys., Inc.,* 150 F.3d 609, 619 (6th Cir.1998). Aetna issued its final decision on Jensen's appeal of STD benefit denial on November 20, 2012. (A.R., ECF No. 25–1, at 2.) The information about Social Security status could not have been included in the Administrator's file and thus cannot be considered here. Aetna could not have disregarded the disability finding because it was unavailable on the date the appeal was decided.

### 4. Physician File Review

In deciding the initial STD application and the STD appeal, Aetna relied on file reviews by neurologists and did not request physical examinations of Jensen. (A.R., ECF No. 25–3, at 85–86, 90–91.) The Sixth Circuit has found some types of physician reviews to be evidence of arbitrary and capricious decisions:

> Although we find nothing inherently objectionable about a file review by a qualified physician in the context of a benefits determination, a plan's decision to conduct a file-only review—especially where the right to [conduct a physical examination] is specifically reserved in the plan—may in some cases, raise questions about the thoroughness and accuracy of the benefits determination.

*Elliott v. Metro. Life Ins. Co.*, 473 F.3d 613, 621 (6th Cir.2006) (quoting *Calvert*, 409 F.3d at 295) (internal quotation marks omitted). FedEx's STD Plan did reserve a physical examination right to the Administrator. (A.R., ECF No. 25–3, at 101.) The STD Plan also places the burden of proof on the covered employee. (*Id.* at 83, 101.)

 Courts have found review inadequate when a physician admitted he had not reviewed the full record, or when gaps in his analysis suggested he had failed to do so. *Calvert*, 409 F.3d at 296. A file-reviewer's summary rejection without rationale is also cause for skepticism. "Generally speaking, a plan may not reject summarily the opinions of a treating physician, but must instead give reasons for adopting an alternative opinion." *Elliott*, 473 F.3d at 620. Plan administrators owe no special deference to the patient's physician. *Cooper*, 486 F.3d at 166–67 (6th Cir.2007) (citing *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 830, 123 S.Ct. 1965, 155 L.Ed.2d 1034 (2003)).

Both of Aetna's physicians reviewed the entire submitted record and demonstrated familiarity with the documents. Both physicians rejected Jensen's physicians' findings based on the STD Plan objective proof requirements or neurological analysis.

Aetna's reviewing neurologist, Dr. Kenneth Root ("Root"), certified that he had reviewed all the files Jensen had submitted for the initial STD application. (*Id.* at 86.) Root's review demonstrates familiarity with the physician notes, Jensen's pain medication prescriptions and dosage amounts, his history of reported chronic headache pain, and his anxiety and possible sleep apnea. (A.R., ECF No. 25–3, at 86–87.)

Root also reviewed Jensen's blood work, finding low Vitamin D, high cholesterol, and triglycerides, all "not directly related to his headache condition." (*Id.*) Root rejected the Headache Impact Test for its subjectivity, calling it a "brief self reported survey with the patient answering questions and not considered objective." (*Id.* at 87.) Because "[n]one of the records document[ed] any objective neurological focal or lateralizing deficit and there [was] no reference to any test result," the claim was denied. (*Id.*) Root articulated a clear rationale for rejecting Jensen's physicians' findings.

Dr. Douglas Brown ("Brown"), also a Neurologist, reviewed Jensen's appeal of the STD benefit decision. (*Id.* at 92.) Brown reviewed all documents that were submitted for review or that were part of Jensen's file: Root's prior file review, eight exam notes from Landy (1/6/11 to 6/5/12), the Headache Impact Test dated 3/21/12, Milnor's exam notes (nine from 4/3/12 to 8/8/12), an EKG, a Pain Rating Scale test, a Polysomnography Interpretation, sworn statements from Landy and Milnor, and blood work and vital signs from 1/6/11 to 6/5/12. (*Id.* at 90–91.)

Brown looked consistently for objective assessment from the pain notes, but found none. (*Id.* at 91.) Brown noted the neurological examination findings for each neurological record provided. (*Id.* at 90.) When no examination had occurred, that was also noted. (*Id.*) Brown noted the presence of some significant objective/clinical information in the file, located in Milnor's 4/18/12 note describing Jensen's agitated state. (*Id.* at 92.) Based on the totality of the evidence, Brown found that Jensen was not disabled, relying, in part, on the absence of a neurological examination to support the 4/18/12 note. (*Id.*) Brown gave a reasoned explanation for his finding. His file review was comprehensive and consistent with the STD Plan's objective proof requirements.

Jensen did not provide the objective findings required by the STD Plan. Aetna had no conflict of interest and did not ignore a timely Social Security disability finding. Aetna's file reviews were not unsubstantiated or cursory in their analyses of the medical record or disability opinions. Jensen has failed to show that Aetna's STD benefit denial was arbitrary and capricious.

### B. Aetna's Denial of LTD Benefits

Under FedEx's LTD Plan, a covered employee will be denied long-term disability benefits "for any illness or injury for which [claimant] did not receive 26 weeks of STD benefits." (A.R., ECF No. 25–6, at 48.) According to the Plan, "LTD benefit payments begin once [participant has] exhausted [his] STD benefit period." (*Id.* at 46.) Aetna's stated reason for LTD benefit denial is that Jensen failed to exhaust STD benefits. (A.R., ECF No. 25–1, at 3.)

The LTD Plan for long-term disability benefits requires any claimant to have received short-term disability benefits under the STD Plan for at least 26 weeks. (A.R., ECF No. 25–7, at 36.) Because the denial of benefits under the STD Plan was not arbitrary and capricious, the denial of long-term benefits under the LTD Plan was not arbitrary and capricious. Jensen did not exhaust his STD benefits, and his claim is barred for failure to exhaust those benefits.

### V. Conclusion

For the foregoing reasons, Defendants' Motion for Summary Judgment is GRANTED. Plaintiff's Motion for Judgment on the Pleadings is DENIED.